**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT A. HALEY,
Plaintiff-Appellant,

v.

THE PAUL REVERE LIFE INSURANCE
COMPANY,
Defendant-Appellee.

No. 95-1701

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Chief District Judge.
(CA-93-115)

Argued: November 1, 1995

Decided: March 4, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hamilton and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Erna Avari Patrick, WOMBLE, CARLYLE, SAND-
RIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for
Appellee. **ON BRIEF:** James W. Crabtree, SMATHERS & THOMP-
SON, Charlotte, North Carolina, for Appellant.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Robert A. Haley became disabled and stopped working in February 1990 as a result of ankylosing spondylitis (a fusing of the spine) and neuropathies (degeneration of the nerves) in his legs. He filed a claim under his employer's long-term disability benefits plan, but the plan's administrator denied the claim on the ground that Haley's disability resulted from medical conditions that preexisted his enrollment in the plan and was therefore excluded by the plan's terms. Contending that the administrator wrongfully denied him benefits, Haley filed this action against the administrator under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court concluded that the administrator had not abused its discretion in denying benefits and granted its motion for summary judgment.

While we conclude that the district court erred in reviewing the administrator's decision for abuse of discretion rather than de novo, we nevertheless affirm the district court's judgment because it is incontrovertible that Haley's disabling ailments preexisted his enrollment in the plan and therefore his resulting disability was excluded from coverage by the plan's terms.

I

In July 1989, Haley began working for Century II, Inc., in Conway, South Carolina, as an electrical engineer. On September 1, 1989, he became eligible for coverage under Century II's long-term disability income benefits plan. Century II provided the benefits of that plan through an insurance policy that it obtained from Paul Revere Life Insurance Company (Revere). Revere was also the administrator of Century II's plan.

In February 1990, several months after he began work, Haley was admitted to a hospital in Wilmington, North Carolina, after fainting. He complained of back pain and tingling and numbness in his legs. The hospital believed that Haley's fainting was"possibly" caused by

2

postural hypotension and diagnosed him as suffering from peripheral neuropathy, anemia, ankylosing spondylitis, and Vitamin B-12 deficiency. After his discharge from the hospital, Haley continued treatment for his condition, but he never returned to work. In October 1990, he submitted a claim to Revere for long-term disability benefits, describing his disability as "neuropathies--ankylosing spondylitis."

After reviewing Haley's medical history, Revere found that Haley's medical records revealed "a history of this condition with specific dates of treatment within the three-month period prior to his effective date." Accordingly, Revere concluded that Haley's condition was "preexisting" and therefore that he was"not eligible to receive benefits under the Long Term Disability policy." [1] Following an internal administrative review of Haley's claim, Revere reaffirmed its denial of benefits, stating:

> Significant to classifying Mr. Haley's ailments of February, 1990 as pre-existing, would be records and sworn testimony

---

[1] Century II's plan contained the following exclusion for preexisting conditions:

> PRE-EXISTING CONDITIONS LIMITATION

> Any period of disability due to a pre-existing condition is not covered.

> PRE-EXISTING CONDITION means a disability which:

> 1. is caused by an injury or sickness; and

> 2. requires an employee, during the three months just before becoming insured, to:

> a. consult a doctor; or

> b. seek diagnosis or advice or receive medical care or treatment; or

> c. undergo hospital admission or doctor's visits for testing or for diagnostic studies; or

> d. obtain services, supplies, prescription drugs or medicines.

> This limitation does not apply to disabilities which begin after the employee has been insured for a period of twelve consecutive months.

pertinent to the pre-existing condition period, June, 1989 through August, 1989. Specific to this time frame would be office notes provided by Dr. John Herion as well as deposition testimony taken of Dr. Herion on April 13, 1993.

Dr. Herion's office notes, on which Revere relied, reveal that when Haley first saw Dr. Herion in November 1988 he had"a history of ankylosing spondylitis and hypertension," but that his symptoms from the ankylosing spondylitis were then "currently stable." Dr. Herion's records also show that Haley returned to visit him on June 21, 1989, for "follow-up evaluation of his hypertension, ankylosing spondylitis, and anxiety/agoraphobia." Dr. Herion's notes from Haley's second visit indicate that Haley "complain[ed] of some bilateral leg numbness" but was "not anxious to have any diagnostic studies performed because the problem ha[d] been present for a short period of time and [was] very transient." The notes from Haley's June 1989 visit include Haley's remark that his wife was more concerned than he was about the condition and conclude, "Consider EMG and nerve conduction velocity studies if the leg numbness persists for the next several weeks."

Haley filed this action under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), contending that Revere wrongfully denied him benefits under Century II's long-term disability plan. Granting Revere's motion for summary judgment, the district court concluded that Revere's decision was supported by "substantial evidence in the Administrative Record under a reasonable interpretation of the plan" and that Revere's denial of benefits was "not arbitrary and/or capricious, and did not result from an abuse of discretion." The court added its independent conclusion that "the entire record in this matter fully supports [Revere's] contentions."

This appeal followed.

II

At the outset, we address the appropriate standard for judicial review of an ERISA plan administrator's decision to deny benefits.

4

Revere, as administrator of Century II's benefit plan, contends that its decision to deny Haley disability benefits warrants deference. It maintains that an "[e]xamination of the Policy language demonstrates numerous areas of discretionary and decision-making authority vested in Revere," and therefore "Revere's Policy entitles it to exercise discretion in making eligibility determinations." Revere argues that because the plan confers such discretionary authority, its decision to deny benefits should be judicially reviewed only for abuse of discretion. Revere also argues that because its factual determinations are based on "the Administrative Record," they, too, should be reviewed only for abuse of discretion.

In support of its contention that the plan gives the administrator discretion, Revere directs our attention to several plan provisions. For example, Revere points out that the plan provides,"In the case of death, any unpaid accrued benefits are paid, at[Revere's] option, to the employee's estate or to one of the employee's surviving relatives based on [Revere's] selection." The plan also states that proof of an individual's insurability "must be based on medical information and must be acceptable to [Revere]." In connection with the processing of claims, Revere points to plan language that reads:

> If [Revere does] not receive notice within twenty days, the claim may be reduced or invalidated. If it can be shown that it was not reasonably possible to submit notice within the twenty day period and it is shown that notice was given as soon as possible, the claim will not be reduced or invalidated.

And in connection with the evaluation of proof submitted to support a continuing disability, the plan gives Revere "the right to require additional written proof to verify the continuance of any disability" and permits Revere to "request this additional proof as often as [Revere] feel[s] is necessary, within reason." Because the plan is "replete with discretionary language," Revere argues, it is entitled "to exercise discretion in making eligibility determinations, and [therefore] the proper standard of [judicial] review is abuse of discretion."

Accepting Revere's argument, the district court concluded that the plan "confers upon Revere, as the ERISA plan administrator and/or

5

plan fiduciary, the discretion to make eligibility determinations." The court therefore concluded that the proper standard for reviewing Revere's denial of benefits is "abuse of discretion."

On appeal, Haley contends that the district court erred in according deference to Revere's decision. Haley argues that the court should have reviewed Revere's decision de novo because Revere acted under a conflict of interest in both administering the plan and paying the benefits. For support, Haley relies on our decision in Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 87 (4th Cir. 1993), in which we held that less deference is due to an administrator's interpretation of a plan "where one interpretation will further the financial interests of the [administrator]."

The question of when it is appropriate for courts to show deference to the decisions of ERISA plan administrators continues to cause confusion. Because such decisions are usually reviewed within a corporate hierarchy on a record made by the plan administrator, a notion emerges that such an "administrative" decision enjoys the same deference accorded the decisions of governmental administrative agencies under the Administrative Procedure Act (APA). See 5 U.S.C. § 706. For example, that suggestion emerges in this case where Revere claims that "under ERISA, Mr. Haley bears the burden of demonstrating that the denial of benefits was an abuse of discretion (arbitrary and capricious)." Compare that formulation with the APA's formulation at 5 U.S.C. § 706(2)(A), which provides that a reviewing court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion." Similarly, the district court found "substantial evidence in the Administrative Record" to support Revere's decision. Compare that formulation with the APA's formulation at 5 U.S.C. § 706(2)(E), which provides that a reviewing court shall set aside agency findings "unsupported by substantial evidence."

Even though some analogies can be made between in-house administrative determinations on ERISA claims and governmental agency decisions, neither plan administrators nor private corporate personnel who review plan administrators' decisions regularly employ the procedural safeguards that justify judicial deference to the decisions of governmental agencies. While that fact alone might be a sufficient one for not according judicial deference to plan administrators' deci-

6

sions generally even if private plan administrators could be thought to provide due process, the proper reason for denying general judicial deference to plan administrators' decisions is that judicial review of those decisions is <u>not</u> governed by principles of administrative law. Rather, ERISA plans are contractual documents which, while regulated, are governed by established principles of contract and trust law. <u>See Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111 (1989) (noting that in determining appropriate standard of judicial review under ERISA, courts should be "guided by principles of trust law"); <u>Wheeler v. Dynamic Eng'g, Inc.</u>, 62 F.3d 634, 638 (4th Cir. 1995) (ERISA plans are interpreted "under ordinary principles of contract law").

Because an ERISA plan is contractual in nature, we use standard contract principles and look to the plan's language to determine whether the plan confers discretion on the administrator to provide benefits and what the scope of that discretion is. When the terms of a plan give an administrator "discretionary powers," principles of trust law dictate that the administrator's exercise of those powers "not [be] subject to control by the court, except to prevent an abuse by the [administrator] of his discretion." Restatement (Second) of Trusts § 187 (1957). When the administrator's exercise of a discretionary power forms the basis of a dispute between the parties, courts do not review the merits of the administrator's decision, but rather decide only the contractual questions of whether the administrator exceeded its power or abused its discretion because only those inquiries are relevant to whether the administrator's decision breached the contractual provision.

If, for example, the language of a plan instructs the administrator to provide specific benefits when a plan participant breaks a leg, the administrator has no discretion and must provide those benefits when a participant breaks his leg. If the administrator is sued for his refusal to provide benefits, the court takes evidence and applies the contract's terms, determining <u>de novo</u> whether the administrator breached the contract. In such a case, the administrator's decision receives no deference from the court because the contract does not confer discretionary authority on the administrator. <u>See</u>, <u>e.g.</u>, <u>Glocker v. W. R. Grace & Co.</u>, 974 F.2d 540, 543 (4th Cir. 1992).

7

If, on the other hand, the language of a plan instructs the administrator to provide "such benefits when a participant breaks a leg, as are determined by the administrator, in his discretion, to be necessary to assist the participant until the leg is healed," the administrator is authorized by the parties' agreement to exercise judgment about the amount of benefits to be provided. If the administrator determines that a $1,000 payment is appropriate, no provision of the contract is breached even though the participant believes that $2,500 is the appropriate amount. In such a case, the administrator's judgment cannot form the basis of a breach of contract absent an abuse of discretion and therefore cannot be subjected to de novo judicial review. See Firestone, 489 U.S. at 111 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers"); Restatement (Second) of Trusts § 187 (1957). While de novo review is inappropriate when reviewing an administrator's exercise of discretion, it is proper in deciding the two questions of contractual interpretation and performance: (1) whether the plan confers discretion upon the administrator to make the decision at issue; and (2) whether the administrator's decision falls within the scope of discretion conferred.

In sum, when reviewing an ERISA plan administrator's decision to grant or deny plan benefits, a court must first decide de novo whether the plan's language prescribes the benefit or whether it confers discretion on the administrator to determine the benefit. If the plan confers discretion, the court must decide, again de novo , whether the administrator, in making its determination, acted within the scope of that discretion. And, finally, if the plan administrator's decision falls within the scope of the administrator's contractually conferred discretion, the court may review the merits of an administrator's decision only for an abuse of discretion. The court must not disturb the administrator's decision if it is reasonable, even if the court itself would have reached a different conclusion. See Doe, 3 F.3d at 85; Restatement (Second) of Trusts § 187 cmt. e (1957) ("The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee").

Finally, in deciding whether an administrator has abused its contractually conferred discretion, a court should consider, to the extent

8

relevant: (1) the scope of the discretion conferred; (2) the purpose of the plan provision in which the discretion is granted; (3) any external standard relevant to the exercise of that discretion; (4) the administrator's motives; and (5) any conflict of interest under which the administrator operates in making its decision. See Restatement (Second) of Trusts § 187 cmt. d (1957).

In this case, Revere, acting as the plan administrator, determined that Haley was not entitled to benefits under Century II's long-term disability plan because Haley's disabling condition fell under the plan's preexisting condition exclusion. The language of that exclusion, however, does not grant Revere discretionary authority to determine whether an employee's disability falls within its scope. While other plan provisions may give Revere discretion to decide peripheral issues, such as whether Haley's claim was properly documented or timely filed, none of the plan's discretionary grants of authority covers Revere's decision to deny Haley benefits under the preexisting condition exclusion.

Accordingly, Haley's ERISA claim for benefits under the plan must be reviewed de novo, and thus we accord no deference to Revere's decision. Having reached that conclusion, we need not address Haley's claim that Revere acted under a conflict of interest.

III

Reviewing de novo Haley's claim for benefits under Century II's long-term disability plan, we agree with the district court that the undisputed facts of record establish that Haley's disabling condition preexisted his enrollment in the plan thus triggering the plan's preexisting condition exclusion.**2**

Haley began work with Century II in July 1989 and became eligible for its long-term disability benefits on September 1, 1989. Approximately six months later, he became disabled. Because Haley

_____

**2** Ordinarily, we would remand the case to the district court to decide the claim in the first instance, applying the proper standard of judicial review. In this case, however, the undisputed facts demonstrate that Revere's decision to deny benefits was the correct one.

9

had been insured for less than 12 months, the plan provides that he be subject to its preexisting condition exclusion, which denies coverage for "[a]ny period of disability due to a preexisting condition." The plan defines a "disability due to a preexisting condition" as a disability caused by injury or sickness that requires, <u>inter alia</u>, an employee, during the three months just before becoming insured, to "consult a doctor; or seek diagnosis or advice or receive medical care or treatment."

Since at least 1986, Haley has complained about back pain as well as tingling and numbness in his legs, and in 1986 he underwent nerve conduction velocity tests to ascertain the reason. When Haley first consulted Dr. Herion in 1988, Haley reported that he had suffered from "ankylosing spondylitis for many years." Ankylosing spondylitis, a disease which results in a fusion or stiffening of the spine, can cause damage to nerves in the body's extremities (neuropathies). At the time of his 1988 visit, Haley's symptoms from the disease were stable. However, when Haley returned to Dr. Herion on June 21, 1989, for a "follow-up evaluation" of his spondylitis and other problems, he complained of numbness and tingling in his legs because those symptoms "bothered" him. Dr. Herion advised Haley that if his condition persisted, Haley should consider "EMG and nerve conduction velocity studies." Dr. Herion later testified that Haley's leg numbness on June 21 was "not a major complaint" but was "one of the several things that [Haley] had talked about during that visit."

As it turned out, however, Haley's condition was serious, and it ultimately caused his disability. Haley's own claim for disability benefits acknowledged that he was disabled from "neuropathies-ankylosing spondylitis."[3] Thus, the very disease Haley discussed with Dr. Herion on June 21 later worsened and caused Haley's disability.

_____

[3] Similarly, Haley wrote on his claim for total disability with the Social Security Administration, "I am unable to work due to neuropathy in my legs and upper limbs. . . . I have difficulty walking. . . . I have ankylosing spondylitis." Explaining how his condition disabled him, he stated:

> Difficulty walking, limited use of legs & feeling. .. . Both legs feel asleep most of the time--must avoid standing long. The sensation in legs is similar--half asleep, tingling constantly--whether standing, or sitting. Also elbows . . . tingle also but not as severe as the legs. (couldn't write for awhile, though). Legs are prone to give out when going down stairs.

10

Because Haley's disabling disease was the subject of a doctor's consultation and advice on June 21, 1989--a date within the three-month period before September 1, 1989, when Haley first became insured--his subsequent period of disability was"due to a preexisting condition" as defined by the plan and, therefore, excluded from the plan's coverage.

Haley argues that the reason he visited Dr. Herion on June 21 was to refill several prescriptions. The purpose of his visit, however, does not negate the fact that Haley sought medical advice on other subjects. Haley concedes that during the visit he asked Dr. Herion why his legs tingled because the tingling bothered him and he "wanted his money's worth" from the visit.

It is apparent that the plan intends to exclude benefits for medical conditions that the employee already has when he begins employment and to provide benefits only for disability caused by injury or sickness occurring while the insured is an employee. The three-month period is an arbitrary, but contractually established, period sufficiently close to the beginning of coverage to provide a reasonable basis for identifying the existence of a preexisting condition. That the record includes doctor's notes prepared contemporaneously with a medical consultation, at which Haley's ultimately disabling illness was discussed and which occurred during the relevant three-month period, is incontrovertible.

While the parties argue over the significance of Haley's condition in relation to the overall purpose of his June 21 doctor's visit, the undisputed fact remains that Haley was suffering at that time from, and sought advice for, the very condition that later disabled him. Because the plan does not provide benefits under such circumstances, we conclude that even under de novo review, the administrator properly denied Haley's claim. Accordingly, we affirm the district court's summary judgment in favor of Revere.

AFFIRMED

11