**Roger L. SARGENT, Plaintiff,**

v.

**Michael H. HOLLAND,
et al., Defendants.**

**Civil Action No. 2:95–0504.**

United States District Court,
S.D. West Virginia,
Charleston Division.

May 7, 1996.

Robert B. Wilson, Charleston, WV, for plaintiff.

Glenda S. Finch and Jo Ann C. Petroziello, UMWA Health and Retirement Funds, Office of General Counsel, Washington, DC, Shari L. Collias, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, for defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross motions for summary judgment. The Court **GRANTS** summary judgment for Defendants.

### BACKGROUND

Plaintiff, Roger L. Sargent, was employed in the coal industry from 1977 to May 9, 1991 when he suffered a disabling injury as a result of a mine accident. He has been totally disabled since that time. Defendants are the Trustees of the United Mine Workers of America (UMWA) 1974 Pension Trust, one of six separate employee benefit trusts, collectively known as the UMWA Health and Retirement Funds (Funds).

Plaintiff applied for disability pension benefits from the 1974 Pension Trust on May 11, 1994 after he injured his back and leg on

May 9, 1991 while working as a roof bolt operator for the SMK Mining and Construction Company. He was awarded Social Security Disability Insurance benefits effective May 9, 1991, the date of the injury. The Trustees do not dispute Plaintiff's claim that he suffered a disabling injury as a result of a mine accident on May 9, 1991, but they denied his application for a disability pension on August 11, 1994 because he was not working in a classified job at the time of the accident for an employer signatory to the National Bituminous Coal Wage Agreement. Plaintiff admits SMK is not a signatory employer.

Plaintiff requested a hearing before the Trustees on September 21, 1994 for reconsideration of their denial of his disability pension claim. Based on the evidence presented at the hearing, the Trustees affirmed the initial denial of pension benefits on June 27, 1995, again finding that Mr. Sargent was not employed by a signatory mine at the time of his accident. On July 3, 1995, Plaintiff moved to Amend Summary of Testimony and Hearing Record to reflect his testimony. On July 10, 1995, Plaintiff submitted his affidavit to be made part of the record.

Article II, C of the 1974 Pension Plan provides:

> A Participant (a) who has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ..., be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....

The Trustees have consistently interpreted this provision to require the mine accident at issue to have occurred while the participant was employed in a classified job for a "signatory employer."[1] A "signatory employer" is an employer which is obligated to contribute to the pension trust by virtue of signing a wage agreement.

Plaintiff contends the requirement that a participant's claim must be based on an accident that occurred while the participant is employed by a signatory employer is contrary to the terms of the 1974 Pension Plan. He further argues he is entitled to disability pension benefits because he relied to his detriment on a December 18, 1989 representation of Robert E. Phalen, President of UMWA District 17, that Sargent would continue to be eligible for UMWA benefits while he was organizing on behalf of the UMWA at SMK, although SMK was not a signatory employer.[2]

---

1. The Trustees have developed a series of interpretive guidelines, called Questions and Answers (Q & As) to aid participants in applying Plan and Trust provisions to particular situations. Q & A 193, issued in 1974, asks:

 Q. A mine worker on temporary leave of absence ... is eligible for health benefits for up to 120 working days during the leave of absence.
 Is he eligible for a disability pension should he become totally disabled as a result of a work-related injury incurred while working for the UMWA during that leave of absence?
 A. Since the injury did nor occur while the person was employed in a classified job for a signatory employer, he is not eligible for a disability pension from the Funds.

 Similarly, pursuant to ERISA, 29 U.S.C. § 1022, the Trustees furnish a Summary Plan Description (SPD) to all beneficiaries of the 1974 Pension Trust. The SPD is sent to the United States Department of Labor, to all miners for whom credit hours are being reported by signatory employers, to the UMWA, to the employers signatory to the National Bituminous Coal Wage Agreement, and to libraries requesting copies. The SPD for the 1974 version of the 1974 Plan states a mine accident "[m]ust involve a physical injury sustained at a particular point in time, while working in a classified job for a signatory Employer." This interpretation is included in the SPDs for the Plan as amended in 1978, 1981, 1984, 1988, and 1993.

2. Mr. Phalen's affidavit states:

 I met with Roger L. Sargent on or around December 18, 1989 and was made aware that he wanted to take a non-union job at SMK Mining and retain his union membership. I gave Mr. Sargent verbal permission to take the job and retain his membership in good standing with the union pursuant to the UMWA Constitution, Article XI, Section 7; with the understanding that Mr. Sargent would participate in all organizing efforts at SMK. I was aware he obtained the SMK job and had my authorization to work there and retain his membership in the UMWA, prior to his injury. This was in accordance with the UMWA Constitution, Article XI, Section 7.

 The District organizes routinely by working with members in non-union mines in conjunc-

Plaintiff did not exercise his right of recall employment with a signatory employer, the Chirco Coal Company, believing he was entitled to all UMWA benefits, including disability pension benefits, while working for SMK. To support this position, Plaintiff cites statements of John R. Vance at the June 5, 1995 benefits eligibility hearing. Mr. Vance testified he was an employee of the Chafin Coal Company and its subcontractors from 1974 to 1989. During that period, he held the position of mine committeeman for Local Union 9553. He stated that he worked with Sargent from approximately 1976 to 1989 for signatory employers, that Plaintiff held the classified position of roof bolt operator while employed by Chafin and its subcontractors, but that his position was terminated due to a lay-off. He also testified that Plaintiff held UMWA "panel/recall rights" with Chafin and its subcontractors as a laid-off classified employee. Vance noted that he was aware of Plaintiff's employment with SMK and knew that he was attempting to organize this non-UMWA employer.

As mine committeeman, Vance testified he was notified of Plaintiff's right of recall employment with Chirco, a subcontractor of Chafin Coal Company, and that Plaintiff was notified of recall by registered letter from Jack Mullins. Mr. Vance was later notified by Mr. Mullins that Sargent had refused his recall to employment by Chirco in order to continue his organizing efforts at SMK. Mr. Vance testified that Local Union 9553 wanted Plaintiff to stay "where he was," at SMK, "because they wanted men to organize." Defs.' Mem.Supp.Summ.J. Ex. A at 4. Plaintiff submitted to the Trustees cancelled checks and dues receipts for March, April, and May, 1991 to show his continued union membership during the period he worked for SMK.

At the hearing, Plaintiff acknowledged he was working for SMK at the time the accident occurred, but he testified he believed he would remain a UMWA member in good standing while employed by SMK as long as he was attempting to organize. Sargent submitted an affidavit to supplement his hearing testimony in which he stated he believed the UMWA Health and Retirement Funds were part of the UMWA and that he was entitled to health and disability benefits while engaged in UMWA authorized organizing activity at SMK.[3]

### STANDARD OF REVIEW

 The standard of review of a decision made by trustees of an ERISA benefit plan generally is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1989); *de Nobel v. Vitro Corp.* 885 F.2d 1180, 1186 (4th Cir.1989). Where the plan gives the trustees discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the trustees abused their discretion. *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954, 103 L.Ed.2d at 92–93 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." (citations and internal quotations omitted)). Our Court of Appeals recently refined the

---

tion with its constitutional obligation to organize. Mr. Sargent paid his dues in compliance with the Constitution of our organizing plan to the degree that I would still consider him to be a member in good standing, with all rights and entitlements, attendant thereto.

**3.** Plaintiff's affidavit further states:
I relied upon my belief that health and disability benefits extended to me while organizing at SMK Mining, Inc. at the behest of the "Union" in refusing recall at the signatory Chirco Coal

Company prior to my mining accident at SMK Mining, Inc.; and but for this belief would not have risked working in a non-signatory mine for the purpose of organizing had I been aware that the UMWA Health and Retirement Funds was not a "Union" organization and had imposed an additional requirement not in the provision of the agreement providing for the disability pension that the accident occur while working for a signatory employer.

standard of review to be applied by district courts reviewing an administrator's exercise of discretion:

> While *de novo* review is inappropriate when reviewing an administrator's exercise of discretion, it is proper in deciding the two questions of contractual interpretation and performance: (1) whether the plan confers discretion upon the administrator to make the decision at issue; and (2) whether the administrator's decision falls within the scope of discretion conferred.

*Haley v. Paul Revere Life Insurance Co.,* 77 F.3d 84, 89 (4th Cir.1996).

■ The Court of Appeals has adopted an abuse of discretion standard of review of the Trustees' decisions under the 1974 Pension Plan. In *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989), the Court held, "There is no question that the Trustees of the UMWA Pension Plan here have discretionary authority, since they have the power of 'full and final determination as to all issues concerning eligibility for benefits' and 'are authorized to promulgate rules and regulations to implement this plan....' " Thus, the Trustee's decision to deny Plaintiff's disability pension satisfies both of the prongs of the *Haley* test: (1) the Plan confers discretion on the Trustees to make the decision at issue since they have the power to determine all issues concerning eligibility for benefits; and, (2) the Trustees' interpretation of the Plan falls within the scope of discretion conferred because they are authorized to promulgate rules to implement the Plan. Under the abuse of discretion standard, if the Trustees' decision is supported by substantial evidence, and is in accordance with the law, the decision must be sustained even if the Court believes that substantial evidence also supports a contrary result. *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Hamrick v. Schweiker,* 679 F.2d 1078, 1082 (4th Cir.1982).

## DISCUSSION

■ Article II, C. of the 1974 Pension Plan explicitly restricts eligibility for pension to participants who have at least ten years of signatory service prior to retirement, have been totally disabled as a result of a mine accident, and are subsequently determined to be eligible for Social Security Disability Insurance Benefits. Defendants agree that Plaintiff had ten years of classified signatory service, was totally disabled as a result of a mine accident, and was subsequently determined to be eligible for Social Security Disability Insurance Benefits. Plaintiff argues that by imposing an additional requirement, namely that Plaintiff must show he was employed by a signatory employer at the time of the mine accident, the Trustees have deprived him of rights conferred by the express terms of the 1974 Pension Plan. This, he claims, is an abuse of discretion.

In *Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 77 (4th Cir.1993), the Court of Appeals, reversing this judge, discussed five criteria to be considered when determining whether the trustees of an employee benefit plan abused their discretion in denying benefits: [4]

---

4. The Court of Appeals recently directed district courts to consider five additional factors, to the extent they are relevant, in deciding whether administrators have abused their discretion: (1) the scope of discretion conferred; (2) the purpose of the plan provision in which the discretion is granted; (3) any external standard relevant to the exercise of that discretion; (4) the administrator's motives; and, (5) any conflict of interest under which the administrator operates in making its decision. *Haley,* 77 F.3d 84, 89 (4th Cir.1996). Neither of the parties raised the these factors in their memoranda. The Court concludes that the *Haley* factors, like the *Lockhart* factors, do not indicate the Trustees abused their discretion. As already noted, the Plan confers broad discretion on the Trustees. Plaintiff has not alleged the Trustees' decision is contrary to the purpose of the Plan provision which grants the discretion. The Court is not aware of any external standard relevant to the Trustee's exercise of discretion. Plaintiff has not called the motives of the Trustees into question. Finally, the Court has been presented with no evidence suggesting the Trustees' decision was tainted by a conflict of interest.

In *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1191 (4th Cir.1989), the Court of Appeals refused to find a conflict of interest noting the "Vitro retirement benefits trust is a fully funded, defined-benefit plan. Vitro of course makes contributions to the trust fund; but benefits decisions have an immediate impact only on the fund itself. In turn, Vitro incurs no direct, immediate

[W]e must give due consideration, for example, to whether administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

The Court noted the "dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own." *Id.*

Plaintiff contends the Trustees' interpretation of the Plan is inconsistent with the goals of the Plan and that it is contrary to the clear language of the Plan. An analysis of the Trustees' interpretation in light of the *Lockhart* factors demonstrates, however, their interpretation of the Plan was not an abuse of discretion.

Plaintiff suggests the goal of the Plan is to implement the benefits established by Article XX of the National Bituminous Coal Wage Agreement of 1974 which, he argues, is designed to secure the right to benefits under the Plan to all UMWA members in good standing. Because he was a member in good standing, Plaintiff claims he is entitled to Plan benefits according to the unambiguous language of Article II, C. of the 1974 Pension Plan, even when employed by a non-signatory employer. According to Sargent, the additional requirement limiting disability benefits to those injured while working for signatory employers undermines a right the UMWA secured on behalf of its members and for which it surrendered valuable consideration. Plaintiff contends the Trustees' interpretation of Article II, C. is detrimental to the interests of the UMWA members for whom the Plan is administered.

The Court, however, concludes the Trustees' interpretation is consistent with the goals of the Plan. Employment with a signatory employer for at least ten years and active UMWA membership are necessary, but not wholly sufficient to establish eligibility for pension benefits. No evidence was presented to suggest the goal of the Plan is to cover all dues-paying UMWA members, even ten-year members, irrespective of where the injury occurred. The payment of UMWA dues does not necessarily establish Plaintiff's entitlement to disability benefits. In fact, neither the payment of Union dues nor membership in the Union is an eligibility requirement for Funds' benefits. Defs.' Mem.Supp Summ.J. at 14.

The Trustees point out that a portion of the funding for disability benefits is provided by employers signatory to the NBCWA and that it is untenable that the signatory employers intended for funds from the pension trust to be used to supplement the benefit plans of non-signatory employers whose employees are injured in mine accidents. Thus, the Trustees' interpretation of the eligibility requirements is not only consistent with the goals of the Plan, but theirs is the most reasonable reading of the Plan provision at issue, and the only reading that takes into account the interests of the signatory employers and those of the UMWA members.

■ Plaintiff argues that payment of his disability benefits should be made from the UMWA 1974 Pension Trust's so-called "orphan fund." Pl.'s Mem.Supp.Summ.J. at 8. Our Court of Appeals held the purpose of the orphan fund "is to provide health and other non-pension benefits to pensioners who retired under the 1974 pension plan, ... and whose last known employer, including any successor, is no longer in the coal mining business." *Dist. 17, Dist. 29, & Local Union 7113, United Mine Workers of America v. Allied Corp.,* 765 F.2d 412, 416 (4th Cir.1985). Although Plaintiff in the instant action claims his disability benefits should be paid from the

---

expenses as a result of benefits determinations favorable to Plan participants. In those circumstances, we obviously cannot attribute 'presumptive bias' to the administrators." Similarly, Plaintiff has not alleged facts indicating the Court should attribute bias to the Trustees of the

1974 Pension Plan. There is no evidence, for example, that the Trustees have any "direct financial stake" in the determination of Plaintiff's eligibility. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 126 (4th Cir.1994).

orphan fund, he has advanced no arguments that payment of the benefits from the orphan fund is consistent with the purposes of that fund. Based on the evidence before it, the Court holds Plaintiff does not fall within the class the orphan fund was created to protect.

Clearly, a necessary goal of the Plan is to preserve Plan resources for employees sustaining mine injuries while employed by signatory employers. This Court previously recognized:

> The Trustees of an employee pension plan such as the UMWA 1974 Pension Plan have a fiduciary obligation under ERISA and under the common law of trust to administer the plan in accordance with the governing plan documents and to pay benefits only to eligible participants. "A trustee has the obligation to guard the assets of the trust from improper claims, as well as the obligation to pay legitimate claims." *Le Febre v. Westinghouse Electric,* 747 F.2d 197, 207 (4th Cir.1984).

*Huff v. United Mine Workers of America Health and Retirement Funds,* 797 F.Supp. 521, 525 (S.D.W.Va.1992). Thus, the Trustees' policy of denying benefits to those injured while working for non-signatory employers to preserve the Fund's resources is well within their discretion and is consistent with the other goals of the Plan.

■ Plaintiff also alleges the Trustees' interpretation violates the clear language of the Plan that creates rights to receive disability pensions for participants with ten years of signatory service who are totally disabled as a result of a mine accident. He points out there is no language in the Plan itself requiring the accident to occur while the employee is working for a signatory employer and argues that the Trustees' interpretation, adding a requirement, is in violation of the clear language of the Plan.

To the contrary, the Court concludes the Trustees' interpretation does not violate the clear language of the 1974 Plan. Although the language of the Plan does not require explicitly the beneficiary to have been working for a signatory employer at the time of a disabling mine accident, that requirement does not contradict the clear language of the Plan. As noted above, the Trustees are authorized to interpret the eligibility provisions of the 1974 Plan. Since the Plan's creation in 1974, the Trustees have consistently interpreted the provision at issue through the SPDs and the Q & A.

Because employee benefit plans are usually long and complex documents, Congress required plan administrators to provide SPDs to each plan participant. Our Court of Appeals observed courts:

> have uniformly held that the SPD was the statutorily established means of informing participants of the terms of the plan and its benefits, and the employee's primary source of information regarding benefits. Since the SPD was the statutorily established source of information to which a plan participant would look for a statement of his rights under an ERISA plan, the SPD would also appear to be the source of information on which a plan participant could rely.

*Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23, 27 (4th Cir.1992) (internal citations and quotation marks omitted). Thus, Congress intended plan administrators, like the Trustees here, who have authority both to interpret benefit plans and to promulgate rules to implement their provisions, to issue SPDs informing participants of the terms of the plan and its benefits. Since 1974, the Trustees have interpreted the plan uniformly in SPDs to cover only miners injured while working for signatory employers. Because the Trustees have the authority to promulgate rules and regulations to implement the Plan, because the SPDs and the Q & A have opined consistently that disability benefits are available only to those miners employed by signatory employers at the time of a disabling mine accident, and because there are no plan provisions to the contrary, the Court concludes the Trustees' interpretation does not violate the clear language of the Plan.

As to the remaining *Lockhart* factors, Plaintiff does not argue and no evidence suggests the Trustees' interpretation of the Plan would render some language of the Plan meaningless or inconsistent, that the interpretation is at odds with the procedural and

substantive requirements of ERISA, or that the provisions at issue have been applied inconsistently. The Court concludes, therefore, the Trustees' interpretation of the Plan provision was not an abuse of discretion.

## ESTOPPEL

■ Plaintiff also argues he is entitled to a disability award based on the common law doctrine of equitable estoppel. Although the parties disagree about whether common law estoppel is precluded by § 514(a) of ERISA,[5] the Court need not reach this legal issue because no agency relationship exists between the UMWA and the UMWA Health and Retirement Funds so that a promise made by an UMWA official to Sargent would bind the Funds to honor it.

Plaintiff asserts he believed the UMWA spoke on behalf of the 1974 Pension Plan and that this belief was fostered by the name of the UMWA Health and Retirement Funds set up to administer the trusts for UMWA members. He alleges he did not exercise his right to recall with a signatory employer because he was asked to continue organizing for the UMWA at SMK and because of the representation of UMWA district 17 President Robert Phalen that he would remain a member of the Union in good standing with all attendant rights and entitlements.[6] Plaintiff asserts he understood this to mean he would retain his rights to health and disability benefits. He contends it was reasonable to believe that Mr. Phalen's representations were made on behalf of the Funds as well as the UMWA. He thus relies on a statement made by the Acting Director of The Funds' Danville Field Service Office, Gary Pauley, that Fund participants are often under the impression that the Funds are controlled by the UMWA and "are greatly confused upon being informed that it is operated by joint trusteeship with BCOA." Defs.' Mem.Supp. Summ. J. Ex. A. at 777. Plaintiff claims the

Trustees must provide him with a disability pension based on his belief that the UMWA Pension Fund is controlled by the UMWA and his detrimental reliance on Mr. Phalen's representations.

Plaintiff, however, has not established the existence of an agency relationship between the UMWA and the UMWA Health and Retirement Funds. The Funds is comprised of six separate collectively bargained employee benefit trusts, including the 1974 Pension Trust. The Bituminous Coal Operators' Association, representing coal industry employers, and the UMWA are settlors of the 1974 Trust, and the Trust is distinct from either organization.

This Court previously has addressed the question of whether union officials acted as agents for a plan and thereby exposed the plan to vicarious liability; the Court cited with approval the following passage from *DiMarco v. Michigan Conf. of Teamsters Welfare Fund,* 861 F.Supp. 599, 612 (E.D.Mich.1994):

> Plaintiff has failed to come forward with any evidence that [the local] was acting with even apparent authority to bind the Fund. Without some sort of showing the fund took steps which gave [the local] the appearance of authority—if not actual authority—with respect to administering or explaining the Fund's death benefits, the Court cannot hold that equitable estoppel should apply to the comments made by one of [the local's] employees.

*Villers v. Bd. of Trustees, Sheet Metal Worker's National Pension Fund,* 901 F.Supp. 1111, 1119 (S.D.W.Va.1995). In *Villers,* the Court concluded the plaintiffs had mustered little, if any, evidence that the plan took steps that gave the local actual or apparent authority to administer or explain plan provisions. The Court granted Defendants' motion for summary judgment.

---

**5.** Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan....

**6.** Although Plaintiff alleges he understood Mr. Phalen's representation as a promise that he would receive medical and disability benefits

from the Funds while working for SMK, a literal reading of President Phalen's statement does not lead necessarily to that conclusion. Accordingly, the Trustees' memoranda make it clear that the Funds do not provide benefits to UMWA members automatically. Mr. Phalen's statement may have been intended to guarantee UMWA rights and entitlements only and not ancillary benefits of the Funds.

Likewise, in this action, Plaintiff has presented no evidence indicating Defendants gave the UMWA actual or apparent authority to administer or explain the Plan. Plaintiff has not attempted to show that Defendants took affirmative steps to foster the impression that the Funds are administered by the UMWA. Although there is some evidence suggesting the plan participants believed Defendants had apparent authority to explain plan provisions, neither the fact that many UMWA members may be under the mistaken impression that the Funds are controlled by the UMWA nor the fact that the Funds bear the name "UMWA 1974 Pension Trust" are sufficient to establish an agency relationship. The Court finds and concludes, therefore, there is no agency relationship between the UMWA and the 1974 Pension Trust and the Trustees are not liable for promises the UMWA may have made to Plaintiff.[7]

The standard used to determine whether a motion for summary judgment should be granted or denied has been stated by our Court of Appeals as follows:

A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109,

111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* — U.S. ——, ——, 115 S.Ct. 67, 68, 130 L.Ed.2d 24, 24 (1994). There are no issues of material fact at issue in the instant action and Defendants are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

7. It is possible, however, Mr. Sargent may have a viable claim against Mr. Phalen and/or the UMWA.