Roger L. SARGENT, Plaintiff–Appellant,

v.

Michael H. HOLLAND;  Marty D. Hudson;
Elliot A. Segal and Joseph J. Stahl, II, as
Trustees of the United Mine Workers Of
America 1974 Benefit Plan And Trust,
Defendants–Appellees.

No. 96–1823.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1997.

Decided May 22, 1997.

**ARGUED:** Roger Daniel Forman, Forman & Crane, L.C., Charleston, West Virginia, for Appellant.  Jo Ann Christina Petroziello, Senior Associate Counsel, Office of the General Counsel, UMWA Health And Retirement Funds, Washington, D.C., for Appellees.  **ON BRIEF:** Robert B. Wilson, Charleston, West Virginia, for Appellant. Glenda S. Finch, Deputy General Counsel, Office of the General Counsel, UMWA Health And Retirement Funds, Washington, D.C., for Appellees.

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINSON wrote the majority opinion, in which Judge WIDENER joined. Judge DUFFY wrote a dissenting opinion.

## OPINION

WILKINSON, Chief Judge:

After injuring his back and leg while working in a coal mine, Roger Sargent applied for disability benefits from the United Mine Workers of America (UMWA) 1974 Pension Trust. The Trustees denied Sargent benefits on the grounds that at the time of the accident he was not working for an employer who was a signatory to the National Bituminous Coal Wage Agreement (NBCWA). Sargent sued for benefits, contending that he met all the eligibility requirements in the 1974 Plan. The district court granted summary judgment for the Trustees, reasoning that the Trustees' position of denying benefits to those injured while working for non-signatory employers was the "most reasonable reading" of the Plan and necessary to preserve the Trust's limited resources. *Sargent v. Holland,* 925 F.Supp. 1155 (S.D.W.Va. 1996). Because we believe that the Trustees have discretion to enforce a reasonable interpretation of the Plan, which they have applied in a consistent fashion for some twenty-two years, we affirm the judgment of the district court.

## I.

Roger Sargent was injured and permanently disabled on May 9, 1991, while working at SMK Mining. At the time of the accident, Sargent was attempting to organize employees at SMK Mining on behalf of the United Mine Workers of America (UMWA), of which he was a member.

After his accident, Sargent applied for disability benefits from the UMWA 1974 Pension Trust. This Trust, created by the 1974 National Bituminous Coal Wage Agreement (NBCWA), and renewed in subsequent agreements, resulted from labor negotiations between the UMWA and the Bituminous Coal Operators Association. Throughout its history, the Trust has suffered from serious financial instability and threatened insolvency, which caused Congress to enact the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701–9722. The 1974 Trust is funded by signatory employers, who contribute based on the number of hours worked by miners at their respective mines. SMK is not a signatory to the NBCWA, and therefore does not contribute to the 1974 Trust.

Article VIII.A. of the 1974 Pension Plan and Trust Agreement instructs the Trustees to "promulgate rules and regulations to implement this Plan." Accordingly, the Trustees have developed a series of interpretive guidelines in question and answer format ("the Q & As") to define terms and provide for consistent interpretation and application of the Plan's provisions. One of these guidelines, Q & A 193, provides that the disabling mine accident must occur "while the person was employed in a classified job for a signatory employer." The same requirement is explained in the Summary Plan Description (SPD) given to all participants as required by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1022.

The Trustees of the UMWA 1974 Pension Trust denied Sargent recovery on the grounds that he was not working for a signatory employer at the time of his accident. Sargent requested a benefits eligibility hearing before a hearing officer appointed by the Plan. The hearing officer heard and denied Sargent's appeal. Sargent then filed this action in the district court against the Trustees of the UMWA 1974 Pension Trust.

The district court granted summary judgment for the Trustees. *Sargent,* 925 F.Supp. 1155. Reviewing the Trustees' interpretation for an abuse of discretion, the district court found that their reading was "not only consistent with the goals of the Plan," but was also the most reasonable interpretation of the Plan. *Id.* at 1160. The court reasoned that it would be "untenable that the signatory employers intended for funds from the pension trust to be used to supplement the benefit plans of non-signatory employers

whose employees are injured in mine accidents." *Id.* The court further determined that the Trustees' interpretation did not conflict with the language of the 1974 Plan. *Id.* at 1161. Finding that the Trustees had clear authority to interpret the Plan and promulgate rules for its implementation, and further noting that the Trustees have published and applied their rule consistently since the Plan's inception in 1974, the court concluded that the Trustees' denial of Sargent's benefits must be upheld. *Id.* Sargent appeals.

## II.

Sargent contends that the Trustees violated the terms of the 1974 Plan by denying him benefits when he satisfied all the criteria articulated in the Plan. He points to the Plan's eligibility requirements for a disability pension, Article II.C.:

A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ..., be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....

Sargent argues that he satisfies all of these elements and is therefore entitled to benefits. The Trustees, Sargent contends, cannot add an additional requirement by limiting the term "mine accident" only to those accidents occurring at the mines of signatory operators.

█ We disagree. We first emphasize that the standard of review in this case is a deferential one. Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts must respect that authority and overturn only those decisions which result from an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). In fact, this court has already determined that "[t]here is no question that the Trustees of the UMW Pension Plan here have discretion-

ary authority, since they have the power of 'full and final determination as to all issues concerning eligibility for benefits' and 'are authorized to promulgate rules and regulations to implement this Plan.'" *Boyd v. Trustees of UMWA Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989) (quoting Pension Plan, Art. VIII.A., B(1)); *accord Lockhart v. UMWA 1974 Pension Trust,* 5 F.3d 74, 77 (4th Cir.1993); *Baker v. UMWA Health and Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir.1991). In exercising that discretion, a trustee has the obligation not only to pay legitimate claims, but to guard trust assets against the assertion of improper ones. *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197, 207 (4th Cir.1984).

This deferential standard of review reflects the truism that administration of a trust resides primarily with those who are charged with that function. "When trustees are in existence, and capable of acting," the Supreme Court has explained, "a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument under which they act." *Nichols v. Eaton,* 91 U.S. 716, 724–725, 23 L.Ed. 254 (1875) (quoted with approval in *Firestone Tire,* 489 U.S. at 111, 109 S.Ct. at 954); *see also Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007–1008 (4th Cir.1985); *LeFebre,* 747 F.2d at 204–205; *Mahoney v. Board of Trustees,* 973 F.2d 968, 971 (1st Cir.1992).

█ Here the Trustees have been vested with authority to "promulgate rules and regulations to implement this Plan," Art. VIII.A. Indeed, we have already recognized their power to define the term "mine accident." *Lockhart,* 5 F.3d 74; *Hale v. UMWA Health & Retirement Fund,* 23 F.3d 899, 901 (4th Cir.1994). Pursuant to this authority, the Trustees issued Q & A 193, providing that the disabling mine accident must occur "while the person was employed in a classified job for a signatory employer." Similarly, the Trustees issued an SPD requiring that a mine accident "[m]ust involve a physical injury sustained at a particular point in time, while working in a classified job for a signatory employer." 1974 SPD. This SPD, furnished to each Plan participant and bene-

ficiary as required by ERISA, 29 U.S.C. § 1022, is "the employee's primary source of information regarding benefits." *Pierce v. Security Trust Life Ins. Co.*, 979 F.2d 23, 27 (4th Cir.1992).

We agree with the district court that the Trustees' construction of the term "mine accident" constitutes no abuse of their discretion, and is in fact the interpretation most consistent with the purposes of the Plan. *Sargent*, 925 F.Supp. at 1160. The 1974 Plan is the product of negotiations between the UMWA and certain coal operators. It is designed to provide disability and pension benefits to the employees of these coal operators, in compliance with ERISA requirements. The Trust is funded by these signatory employers. The Trustees' interpretation of "mine accident" is thus consistent with the purpose of the Plan to direct Plan resources to workers employed by signatory employers. And, as the district court noted, it would be "untenable" to suggest that signatory employers intended funds from the Trust to subsidize the benefit plans of non-signatory employers whose employees were injured in mine accidents. *Sargent*, 925 F.Supp. at 1160.

Sargent contends, however, that his interpretation would not require massive subsidization by signatory employers of workers at non-signatory operations because the provision under which he is seeking recovery, II.C., covers only those miners who have accumulated more than ten years of experience at signatory operations. Sargent overlooks, however, the very next provision of the Plan, II.D., which mandates only slightly lower disability benefits to miners who have accumulated less than ten years of signatory service. The occurrence of a "mine accident" also triggers benefits under that provision. If we insist for Sargent's sake that "mine accident" includes accidents at non-signatory operations, we necessarily require the Trust to pay out benefits to all injured miners who meet the minimal qualifications of II.D., regardless of whatever minimal amount their employers may have paid into the Trust. The interpretation articulated by the Trustees in Q & A 193 and the SPD is designed to guard against precisely this circumstance.

Contrary to Sargent's contention, the Trustees' definition of "mine accident" does not run afoul of the Plan's plain language. Nothing in the 1974 Plan suggests that signatory employers should subsidize the costs of injuries at non-signatory mines. The Plan does not explicitly limit "mine accident" to "signatory mine accident," just as it does not explicitly limit "mine accident" to "coal mine accident." It would be ludicrous to suggest, however, that the Trust is required to disburse benefits to miners injured in gold mine or copper mine accidents. It would similarly frustrate the purpose of the Plan to insist that the Trust cover workers injured at non-signatory operations. The identities of the parties to the agreement and purpose of the Plan preclude these readings of "mine accident." The Trustees simply articulated in the Q & As and the SPD what is inherent in the Plan.

Several other factors weigh in support of upholding the Trustees' view. First, courts should not lightly overturn twenty-two years of clear, consistent, and settled plan interpretation. Since December 1974, the Trustees have published and applied the signatory operator requirement. The SPD and Q & A 193 both provide clear notice that the disabling mine accident must occur at the mine of a signatory employer. The Trustees have applied the rule to every application for benefits from the time of the Plan's inception. Since the Trustees published their interpretation of "mine accident," the NBCWA has been renegotiated several times. Yet the requirement that accidents occur at signatory operations in order to be covered has remained unchanged.

Finally, we must consider the practical effects of overturning the Trustees' twenty-two-year rule. Such an action on our part would inject inequities into plan administration—allowing Sargent a recovery when all previous similarly-situated miners have failed to receive one. Furthermore, our redefinition of "mine accident" would cause financial instability in the 1974 Trust by requiring the Trust to pay out significant unanticipated benefits. The creation of such inequalities and the upset of actuarial calculations only reaffirm the wisdom of the Supreme Court's

admonition that courts not casually supplant the reasonable judgments of plan administrators with their own.

The Trustees of the 1974 Trust have operated within their discretion in consistently defining "mine accident" for over two decades. We think the district court correctly declined to interfere with their ruling.

### III.

Sargent next contends that the Trustees are estopped from denying him benefits because at the time Sargent began working for SMK, his UMWA District President, Robert Phalen, assured Sargent he would retain the rights of UMWA membership while he worked at SMK. Sargent claims he understood Phalen to have the authority to speak for the UMWA 1974 Pension Trust, and he thought union member ship necessarily included continued eligibility for pensions from the Trust. Sargent relied to his detriment on Phalen's representations, he says, by declining his right of recall to a union mine. Thus, Sargent argues that the Trustees should be held to the implicit promise made by Phalen.

■ This argument lacks merit. To begin with, this circuit has repeatedly rejected efforts to have oral statements override the written terms of ERISA benefit plans. *See, e.g., HealthSouth Rehab. Hosp. v. American Nat. Red Cross,* 101 F.3d 1005, 1010 (4th Cir.1996); *Coleman v. Nationwide Life Insurance,* 969 F.2d 54, 58–59 (4th Cir.1992). Quite apart from that, however, UMWA officers do not have authority to bind the Trustees of the 1974 Trust or to commit Trust assets. No agency relationship exists between the Trust and Robert Phalen. The Trustees, moreover, are authorized to pay benefits only to applicants who satisfy the disability pension eligibility criteria. If every UMWA officer could bind the Trust to different criteria with any representation, the Trust could not maintain financial viability.

### IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*

DUFFY, District Judge, dissenting:

I respectfully dissent. I share many of the concerns underlying the majority opinion in this case, and I dissent because I view those concerns as beyond the scope of our review.

### I.

The question before the court is whether the Trustees of the UMWA 1974 Pension Trust abused their discretion in denying Roger Sargent disability benefits because he was not working for a signatory employer at the time of his accident.

Simply stated, the Plan has no such requirement. The Plan's eligibility requirements for a disability pension, as set forth in Article II.C. are:

A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ..., be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....

This court, in *Lockhart v. UMWA 1974 Pension Trust,* 5 F.3d 74 (4th Cir.1993), stated:

The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself. *See Callahan v. Rouge Steel Co.,* 941 F.2d 456, 460 (6th Cir.1991) (most important factor in considering whether denial of benefits was arbitrary and capricious is the language of the plan); *see also* 29 U.S.C.A. § 1104(a)(1)(D) (West 1985 & Supp.1993) (trustees must discharge duties in accordance with documents and instruments governing the plan); 29 U.S.C. § 1102(a)(1), (b)(4) (1988) (benefit plans must be in writing and must specify the basis on which payments are to be made from the plan).

*Id.* at 78.

It is uncontroverted that Sargent was a Participant in the Plan, had at least 10 years

of signatory service prior to his retirement, became totally disabled as a result of an accident while working in a mine (conceded during oral argument), and has been determined to be eligible for Social Security Disability Insurance Benefits. Accordingly, as per the clear and unambiguous language of the plan, Sargent qualifies for benefits.

The Trustees, however, rejected Sargent's claim for benefits by interpreting the term "mine accident" to include only those accidents occurring at the mines of signatory operators. The Trustees undoubtedly have the power to define the term "mine accident" when a factual dispute exists as to how an employee was injured. For example, this court affirmed the Trustees' denial of benefits to a mine worker who was run over by a railroad car on his way to work. *Id.* at 74. As the majority opinion correctly points out, the Trustees have been vested with authority to make such determinations.

However, this court stated in *Davis v. Burlington Indus., Inc.,* that "[i]f the plan language is unambiguous, . . . we would not defer to a contrary interpretation by the [trustees]." 966 F.2d 890, 895 (4th Cir.1992).

The Plan language at question is unambiguous, and under the facts of this case no interpretation is needed nor warranted. It is conceded that Sargent was injured by an accident in a mine. To allow the Trustees to then determine that a Participant who was injured while working in a mine was not injured as a result of a "mine accident" is, in my opinion, an abuse of discretion even under a deferential standard of review. *See Lockhart,* 5 F.3d at 78 (If the denial of benefits is contrary to the clear language of the plan, the decision will constitute an abuse of discretion.).

The Trustees have indeed been consistent in their position since the issuance of the Summary Plan Description (SPD) in 1974 requiring that a disabling mine accident must have occurred "while the person was employed in a classified job for a signatory employer." This, however, begs the question because the SPD creates from whole cloth an additional requirement not found in the Plan document.

The courts are frequently beseeched by employees seeking benefits from ERISA plans to allow claims based on the claimants' reliance upon summary plan descriptions when the language of the plans do not support their claims. Invariably, these claims are denied because the plan must control over the SPD. This case presents the unique situation wherein the claimant relies upon the clear language of the Plan, and the Plan administrators rely upon the SPD requirements.

As the majority opinion fully explains, there are many valid policy arguments to be made in support of an additional requirement, and the settlors of the Trust may have been wise to include such a requirement. The settlors addressed the interests of signatory employers by requiring at least ten (10) years service for such employers in order for a miner to become eligible for benefits. This demonstrates that the parties in drafting the plan contemplated how to protect the interests of signatory operators and could have inserted an additional requirement such as that imposed by the Trustees had they so desired.

The record below does not disclose, nor was counsel able to state at oral argument, how many claims of this type exist other than Sargent's. While I suspect the number of totally disabled miners with ten (10) years of signatory service who were injured in a non-signatory mine is very limited, there is no way for this court to make that determination. Likewise, there is nothing in the record that allows this court to speculate about how many claims might be filed under provision II.D. of the Plan. The majority fears that enforcing the Plan as written may result in a multitude of payments to miners with less than ten (10) years of signatory service who meet the minimal qualifications of II.D. While the protection of trust assets is necessary and laudatory, the Trustees may not ensure the vitality of the trust by withholding benefits from those who clearly qualify under the terms established by the settlors of the Plan.

The majority's concerns are valid, but better left to the arm's-length negotiations between the union and the mine operators.

The Trust has been renewed several times since 1974 without addressing the difference in wording between the Plan drafted by the settlors and the SPD drafted by the Trustees. Since this is a case of first impression in this circuit, I would invite the parties to resolve this problem at the negotiation of the next renewal. Until they do so, I would enforce the plain language of the Plan.

## II.

Finding that Roger Sargent qualifies under the Plan, I would respectfully reverse the judgment of the district court.

## III.

I concur with the majority that the estoppel argument lacks merit.