**Rita D. POEPPEL, Plaintiff,**

v.

**The HARTFORD LIFE INSURANCE COMPANY, Defendant.**

**No. CIV.A. 6:01–2880–25.**

United States District Court,
D. South Carolina,
Greenville Division.

March 4, 2003.

---

Sarah E. Day, Womble, Carlyle, Sandridge and Rice, Greenville, SC, for Defendant.

Clarence Rauch Wise, Wise and Tunstall, Greenwood, SC, for Plaintiff.

## ORDER

WOOTEN, District Judge.

### *INTRODUCTION*

In this case, the plaintiff alleges that the defendant unlawfully denied her benefits as a beneficiary under an employee benefit plan insuring her brother, Randall D. Duvall ("Duvall").[1] The defendant denies these allegations and has filed a motion for summary judgment. (Doc. # 18). The plaintiff opposes the defendant's motion for summary judgment.

This matter is now before the Court for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge William M. Catoe, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.). In his Report, Magistrate Judge Catoe recommends that the Court deny the defendant's motion for summary judgment. The defendant has filed objections to the Report.

■■■ In conducting this review, the Court applies the following standard:

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections...The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of

1. It is undisputed that the employee benefit plan at issue is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia,* 791 F.Supp. 137, 138 (D.S.C. 1992) (citations omitted). In light of this standard, the Court has reviewed, *de novo,* the Report and objections thereto. The Court declines to accept the Report.

### STANDARD OF REVIEW

■ The standard of review of a decision made by trustees of an ERISA benefit plan is ordinarily *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health and Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989). However, where the plan gives the trustees discretion to determine benefit eligibility or to construe plan terms, the standard of review is whether the trustees abused that discretion. *Firestone, supra,* 489 U.S. at 111, 109 S.Ct. 948 (holding that trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.) Where the plan administrator does not have discretion to determine benefit eligibility, however, such decisions are reviewed *de novo. See generally Firestone, supra,* 489 U.S. 101, 109 S.Ct. 948.

In this case, the parties agree that the appropriate standard of review in this case is *de novo.* Consequently, the Court applies the *de novo* standard of review in its analysis of this case.

### STANDARD FOR SUMMARY JUDGMENT

In consideration of the defendant's motion for summary judgment, the Court is also cognizant of the fact that a moving party is entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.Pro. 56(c). See *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir. 1979).

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A mere scintilla of evidence supporting the case is insufficient. *Id. Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513

U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994).

## *ANALYSIS*

■ As the summary judgment record reflects, Duvall died following injuries sustained in a single car wreck on August 5, 2000, at approximately 3:48 a.m. Specifically, according to the accident report, Duvall lost control of his vehicle and it veered off the roadway, swerved back onto the roadway, crossed into the opposite lane, left the roadway again, and struck a tree. Duvall's seatbelt had not fastened and unopened alcohol containers were found at the scene. A toxicology report from the Greenville County Coroner's office reflected that, at the time of the wreck, Duvall's blood alcohol content was .212%, his urine alcohol level was .247%, and his ocular fluid blood alcohol level was .270%. Multiple body trauma was identified as Duvall's cause of death. These facts are not disputed by the parties.

In reliance upon the undisputed facts identified herein, the defendant denied the plaintiff's claim for beneficiary benefits, stating, in part, that Duvall's death was not an "injury" as defined in the policy.[2] Based on the reasons discussed herein, the undersigned concludes that the defendant's justification for denying the plaintiff's claim for benefits is not without merit.

■ Under the insurance policy at issue, an "injury" is defined, in part, as a "bodily injury resulting directly from accident and independently of all other causes which occur . . ." Importantly, the policy does *not* define the term "accident"[3] and does *not* contain an express limitation excluding benefits for a loss caused or contributed to by intoxication. Consequently, those terms which are not specifically defined within the policy, must be interpreted under the principles of federal common law. *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■■ As recently explained in *Mullaney v. Aetna U.S. Healthcare,* 103 F.Supp.2d 486 (D.R.I.2000), a case analogous to the one presently before the Court, the term "accident" was defined as follows:

. . . In the years following the passage of ERISA, a substantial body of federal common law has arisen that directly addresses the meaning of "accident" and has come to apply a subjective/objective standard in determining what constitutes an "accident." The first case to tackle decisively the "metaphysical conundrum of what is an accident" in terms of federal common law was *Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077, 1084 (1st Cir.),cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). *Wickman* establishes a workable standard for determining which acts and occurrences fall within the realm of "accident" and which do not.

In *Wickman,* plaintiff sued after she was denied accidental death benefits following her husband's death. Plaintiff's husband had climbed over a guardrail on a highway overpass and hung by one hand from the rail over railroad tracks forty to fifty feet below. Plaintiff's husband

---

**2.** The defendant also argues that the instant policy's exclusion for "intentionally self-inflicted injury" would also preclude the plaintiff's recovery of benefits in this case. However, the undersigned need not address this issue, having concluded herein that Duvall's death was not "accidental."

**3.** An "accident" is defined by Black's Law Dictionary as an event happening without any human agency, or if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. *Black's Law Dictionary* 14 (5th ed.1979).

fell to the tracks below and died later that evening.

The life insurance company refused to pay AD & D benefits to the widow, noting that it did not pay benefits if the death was the result of suicide or self-inflicted injury. Plaintiff denied that her husband had committed suicide or intended to harm himself and insisted that his death was accidental. A United States Magistrate Judge ruled that "[the deceased] knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of his volitional act of placing himself outside of the guardrail and hanging on with one hand." *Wickman,* 908 F.2d at 1081. That ruling was appealed.

In reviewing the case, the First Circuit established a subjective/objective test to be used in determining what constitutes "accidental" death. The *Wickman* test for determining whether or not an occurrence constitutes an "accident" is a three-pronged one. First, one must consider "the reasonable expectations of the insured when the policy was purchased." *Id.* at 1088. Second, if the insured did not expect an injury similar to that suffered, the fact-finder must then ask whether the insured's expectation was reasonable. See *id.* This requirement, the Court stated, "will prevent unrealistic expectations from undermining the purpose of accident insurance." *Id.* In other words, if the insured's belief is unreasonable, then the injury will not be considered an accident. Third, if the fact-finder cannot determine the insured's subjective expectation, the fact-finder must then ask "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* Once

again, if a reasonable person would have expected the injury to occur as a result of the insured's actions, then the resultant injury is not an accident. "This finding equates with a determination either that [the deceased] expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable." *Id.* at 1089. To further illustrate this proposition, the Court in *Wickman* used the example of the "game" of Russian roulette, which is played by pointing a revolver with a bullet loaded in one chamber at the player's head, spinning the barrel, and pulling the trigger. The players in such "games" neither intend nor expect to be killed. For them, the "game" is merely a daring pastime, and each player seemingly "entertain[s] a fanciful expectation that fate [will] inevitably favor them." *Wickman,* 908 F.2d at 1087. Nevertheless, when deaths do occur in the course of these "games," courts have routinely held that "the 'insureds' deaths in these cases, regardless of actual expectation or intention, were not accidental." *Id.* Although the facts of *Wickman* do not involve driving while intoxicated, the test which *Wickman* establishes can be applied to cases of drunk driving. Several courts, recognizing the applicability of the *Wickman* test in such cases, have utilized it in their analysis and have found that death resulting from such activity not to be accidental. For example, in *Cozzie v. Metropolitan Life Insurance Company,* 140 F.3d 1104 (7th Cir.1998), plaintiff sued for recovery of life insurance benefits after her husband was killed as a result of driving while intoxicated. Defendant denied plaintiff's claim and interpreted "accident" as an event "not 'reasonably foreseeable.' " *Cozzie,* 140 F.3d at 1109. The Seventh Circuit, applying *Wickman,* found that

even "[i]f the insured did not believe that the result would occur, we must consider whether such an estimation can be considered reasonable. If the expectations of the insured were objectively unreasonable, then injuries or death resulting therefrom are not accidental." *Id.* at 1110. The Seventh Circuit concluded that "in light of the reasoning underlying the definition, it cannot be said that MetLife's definition of 'accident' is downright unreasonable." *Id.* In *Walker v. Metropolitan Life Insurance Company,* 24 F. Supp 2d. 775 (E.D.Mich.1997), another case that applies the *Wickman* standard, defendant Metropolitan Life denied benefits to the beneficiary of a man killed as a result of driving while intoxicated. In *Walker,* plaintiff argued that the insured's death was an accident because he did not intend or expect to be injured or to die as a result of his drunk driving. *Walker,* 24 F.Supp.2d at 781. The Court in *Walker* found that "[t]he hazards of driving while intoxicated are well-known. The public is reminded daily of the risks of driving while intoxicated both in warnings from the media and in motor vehicle and criminal laws." *Id.* The Court thus held that "a reasonable person in the decedents shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death." *Id.* at 782.

Other courts have also held that death or serious injury resulting from driving while intoxicated is not "accidental." See *Cates v. Metropolitan Life Insurance Co. Inc.,* 14 F.Supp.2d 1024, 1027 (E.D.Tenn.1996), aff'd, 149 F.3d 1182 (6th Cir.1998)(holding it is not unreasonable to conclude that driving while intoxicated made the possibility of injury or death reasonably foreseeable and thus not accidental); *Schultz v. Metropolitan Life Insurance Co.,* 994 F.Supp. 1419, 1421 (M.D.Fla.1997)("While [the decedent] did not intend to die, his expectations were unreasonable given his condition. It is just common sense that a driver whose faculties are significantly impaired by alcohol, or drugs, or both, risks his life as well as others.").

Applying the rule of *Wickman,* this Court also concludes that Duvall's death cannot be deemed an "accident." As stated above, Duvall died following injuries sustained in a single car wreck on August 5, 2000, in the very early morning hours. Unfortunately, Duvall lost control of his vehicle and struck a tree which resulted in his death. Duvall's seatbelt was 'not fastened and unopened alcohol containers were found at the scene. A toxicology report reflected that Duvall's undisputed blood alcohol content was .212%, his urine alcohol level was .247%, and his ocular fluid blood alcohol level was .270%. There is only one reasonable conclusion that can be reached: Duvall was highly intoxicated at the time of his death. Neither party contends otherwise. As such, no genuine issue of material fact exists on this issue.

As a matter of common sense and reasonableness, there can be no question that but for Duvall's intoxication, the wreck might well not have happened. See *Smith v. Life Ins. Co. of North America,* 872 F.Supp. 482, 485 (W.D.Tenn.1994)(holding that decedent's voluntary consumption of alcohol, resulting in a level of .23, was at least a partial cause of vehicular collision, precluding accidental benefits). Because Duvall's actions clearly fail the *Wickman* test, his death cannot be considered "accidental." In reaching this conclusion, the undersigned is especially mindful of the Fourth Circuit Court of Appeals' decision in *Baker v. Provident Life & Accident Ins. Co.,* 171 F.3d 939 (4th Cir.1999). Although factually distinguishable from this case,

*Baker* certainly provides guidance on the issues presently before this Court.

In *Baker,* an insured brought action against his group health insurer under ERISA, challenging denial of coverage for medical expenses incurred as a result of an automobile accident that occurred while the insured was driving drunk. The United States District Court for the Western District of North Carolina granted summary judgment for the insurer and the insured appealed. On appeal, the Fourth Circuit Court of Appeals held that drinking and driving was voluntary participation in involuntary manslaughter that precluded health insurance benefits and the District Court's granting of summary judgment was affirmed. In reaching this conclusion, the Fourth Circuit Court of Appeals reasoned that:

> ...The dangers of driving while intoxicated are plain. Baker cannot now be heard to claim that he was unaware that his behavior threatened his own life and those of other motorists. Inasmuch as a reasonable person in Baker's position would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated, Baker's participation in the felony of involuntary manslaughter was voluntary...
>
> When Baker drank too much and decided to drive his car, he should have reasonably foreseen that his actions might lead to the death of another...

Such reasoning is consistent with this Court's conclusion that Duvall's death cannot be deemed an "accident" for purposes of the plaintiff's recovery of benefits in this case.

While the undersigned is certainly sympathetic to the plaintiff's tragic loss, federal common law, and Fourth Circuit precedent, leads to the conclusion that the defendant's denial of insurance benefits to the plaintiff was not improper.

## CONCLUSION

In sum, **IT IS THEREFORE ORDERED** that the defendant's objections to the Report are **SUSTAINED** and the defendant's motion for summary judgment is **GRANTED.** (Doc. # 18).

**IT IS SO ORDERED.**